**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. |
| | : | 09-CV-687-TCK-FHM |
| | : | |
| **DON N. SPAUGY,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT**

The United States Securities and Exchange Commission files this Complaint against

Defendant Don N. Spaugy ("Spaugy" or "Defendant") and would respectfully show the Court as

follows:

**I.      Summary**

1.      This case involves insider trading by Spaugy in the securities of SemGroup

Energy Partners, LP ("SGLP"), a Tulsa, Oklahoma-based petroleum transportation and storage

company.

2.      At the time of Spaugy's trading: he was the Vice President of Financial Services

at SemGroup, LP ("SemGroup"); SemGroup was SGLP's parent company and its largest source

of revenue; and SGLP's common units, representing limited partnership interests, traded on the

Nasdaq Stock Market.

3.      Between late May 2008 and the morning of July 15, 2008, Spaugy learned that

SemGroup was in a liquidity crisis driven by massive margin calls from its wrong-way bets in

the commodities and futures markets.  Knowing this confidential information, and in breach of a

duty of trust and confidence, on July 15 and 16, 2008, Spaugy liquidated his SGLP holdings—

selling 4,500 SGLP units at an average sale price of approximately $23.28 per unit.

4.       On July 17, 2008, after the close of trading, SGLP publicly announced that

SemGroup was "experiencing liquidity issues" and was considering bankruptcy.  The next day,

SGLP's unit price closed at $8.30 per unit, 64.35% lower than Spaugy's average sale price.

5.       By selling his SGLP holdings on July 15 and 16, Spaugy avoided trading losses of

$67,424.

6.       By reason of these activities, Defendant violated Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §

240.10b-5] thereunder.  The Commission, in the interest of protecting the public from any further

fraudulent activity, brings this action against Defendant seeking permanent injunctive relief,

disgorgement of illicit profits (losses avoided) and accrued prejudgment interest, and civil

monetary penalties.

## II.       Jurisdiction

7.       The Commission brings this action pursuant to the authority conferred upon it by

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].  The Commission seeks the imposition

of civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

8.       This Court has jurisdiction over this action pursuant to Sections 21(d), 21A and

27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1 and 78aa].  Defendant, directly and

indirectly, made use of the mails and of the means and instrumentalities of interstate commerce

in connection with the acts, practices and courses of business described in this Complaint.

9.       Venue is proper because transactions, acts, practices and courses of business

described below occurred within the jurisdiction of the Northern District of Oklahoma.

### III.  Defendant

10.  **Don N. Spaugy**, age 58, resides in Tulsa.  Prior to resigning in October 2009, he was SemGroup's Vice President of Financial Services.  Spaugy was responsible for credit, investment, interest, and currency risk management at SemGroup.

### IV.  Statement of Facts

#### A.  Spaugy Learns Material Nonpublic Information

11.  Between late May 2008 and before he sold his SGLP units on July 15 and 16, 2008, Spaugy learned material nonpublic information about SemGroup relating to margin calls, credit and trade line cuts, an overdrawn bank account, and the novation of its trading portfolio.

#### *Margin Calls*

12.  By at least May 29, 2008, Spaugy understood that SemGroup's commodity and futures trading portfolio was negatively impacted by rising and volatile crude oil prices.

13.  From May 29 to July 14, 2008, crude oil prices increased from a closing price on May 29 of $126.70 a barrel (Cushing, OK WTI Spot Price FOB) to $145.16 a barrel on July 14. The volatile and surging price of crude oil triggered massive, debilitating margin calls for SemGroup.

14.  Spaugy personally received, via email, 111 margin calls from six futures commission merchants ("FCMs") totaling over $570 million for SemGroup from June 2, 2008 through July 14, 2008.

#### *Credit and Trade Lines Cut*

15.  From late May to early July 2008, after receiving nonpublic financial information from SemGroup, certain SemGroup customers and trading partners began to reduce/terminate

their credit and trade lines with the company. Credit and trade line cuts reduced SemGroup's borrowing capacity and cash position—straining its ability to maintain daily operations.

16. As SemGroup's Vice President of Financial Services, Spaugy was informed of SemGroup's credit and trade line cuts.

### *Overdrawn Account*

17. As margin calls devoured SemGroup's available cash, SemGroup experienced liquidity issues. Spaugy was aware of these issues.

18. On July 9, 2008, Spaugy received an email of "High" importance from an employee at SemGroup's commercial bank. The email notified Spaugy that a primary SemGroup bank account was overdrawn by $4,196,756.96.

### *Novation of Trading Portfolio*

19. Running out of cash and unable to absorb additional margin calls, on July 10, 2008, a SemGroup executive met with representatives of a large international bank at a New York City hotel to discuss transferring SemGroup's NYMEX-traded commodities and futures portfolio. Spaugy was instrumental in arranging the meeting.

20. Following the New York meeting, Spaugy worked on the team responsible for novating the portfolio to the international bank. While working on the novation, Spaugy learned confidential details about the terms of the transaction and the timing of the position transfers.

21. By July 14, SemGroup had agreed, in principal, to transfer its NYMEX portfolio to the international bank. To accomplish the transaction, SemGroup agreed to pay the international bank a $143 million fee for assuming responsibility for the risky trading portfolio. On July 15, the transfer agreement between SemGroup and the international bank was executed. Later that day, and the following day, based on instructions from Spaugy, SemGroup's FCMs

transferred all of SemGroup's NYMEX-traded commodities and futures positions to the international bank.

22.     As a result of the novation, SemGroup's $2.5 billion *unrealized* mark-to-market losses became *realized* losses for financial reporting purposes.

### B.     Spaugy Liquidates His SGLP Holdings

23.     On July 14, 2008, Spaugy contacted the broker-dealer where he held his SGLP units and asked the client associate assigned to his account when he would first have the ability to sell his SGLP units and receive long-term capital gains treatment on the sale (as a SemGroup employee, Spaugy acquired his units in SGLP's July 18, 2007 initial public offering). The client associate informed Spaugy that he would have to hold his units until July 18, 2008 to receive long-term capital gains treatment.

24.     Shortly before noon on July 15, 2008, Spaugy called the client associate he spoke to the day before and placed an order to sell 2,500 SGLP units at market. Within minutes of placing his sell order, it was executed. Spaugy also informed the client associate that he would call back on Friday, July 18, to sell his remaining 2,000 units to capture long-term capital gains treatment.

25.     On July 16, 2008, Spaugy again called his broker-dealer, this time talking to his financial advisor (the advisor was unavailable on July 14 and 15), and placed an order to sell his remaining 2,000 SGLP units at market. Within minutes of placing his sell order, it was executed.

26.     Spaugy generated total sale proceeds of $104,774.55 by selling 4,500 SGLP units at an average sale price of approximately $23.28 per unit.

27.     On July 17, 2008, after the close of trading, SGLP publicly announced (for the first time) that SemGroup was "experiencing liquidity issues and is exploring various

alternatives, including raising additional equity, debt capital or the filing of a voluntary petition

for reorganization under Chapter 11 of the Bankruptcy Code."

28.     On July 18, 2008, SGLP's unit price closed at $8.30 per unit, 64.35% lower than

Spaugy's average sale price.  By liquidating his position on July 15 and July 16, Spaugy avoided

trading losses of $67,424.  Ultimately, on July 22, 2008, SemGroup filed for bankruptcy.

**C.      Spaugy Violated SemGroup's Polices Regarding the Use of Confidential Company Information**

29.     SemGroup's policy and procedure manual states that "each Employee is

prohibited from disclosing, directly or indirectly, to any unauthorized person, business or other

entity, or using, for the Employee's own purposes, any confidential information."

30.     The manual states that "confidential information" includes, among other things:

business and proprietary information; company financial information; information regarding

costs, profits, markets, market studies and forecasts; other business affairs and methods;

customer lists and customer prospects; prospects and opportunities; substance of agreements

with customers and others; pending projects and proposals; and any and all information

concerning operational details and business plans.

31.     Spaugy received the manual and agreed to adhere to it.  Nevertheless, Spaugy

used confidential company information for his own purposes when, based on that information, he

sold his SGLP securities.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder**

32.     Plaintiff Commission repeats and incorporates by reference paragraphs 1 through

31 of this Complaint as if set forth verbatim herein.

33.     Defendant, as a high-level employee of SemGroup, owed a duty of trust and confidence to his employer.  As a result, Defendant had a duty not use SemGroup's confidential corporate information for his personal benefit.

34.     In breach of this duty, Defendant sold all of his SGLP units on the basis of material nonpublic information obtained from SemGroup.  Defendant knew or was severely reckless in not knowing that the information in his possession was material and nonpublic and that his trading on the basis of the information was improper and in breach of his duty.

35.     By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(i)     permanently enjoin Defendant from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]  and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

(ii)    order Defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] for his violations of the federal securities laws as alleged herein;

(iii)   order Defendant to disgorge all ill-gotten gains from the conduct alleged herein, with prejudgment interest; and

(vi)    grant such other relief as this Court may deem just and appropriate.

DATED:        October 23, 2009              Respectfully submitted,


                                            _s/ Robert Long_
                                            ROBERT LONG
                                            Attorney for Plaintiff
                                            Arizona Bar No. 019180
                                            U.S. Securities and Exchange Commission
                                            801 Cherry Street, 19th Floor
                                            Fort Worth, TX  76102-6882
                                            (817) 978-6477
                                            (817) 978-4927 (*fax*)

Of Counsel:
ROBERT C. HANNAN
Texas Bar No. 08924700
U.S. Securities and Exchange Commission
801 Cherry Street, 19th Floor
Fort Worth, TX 76102-6882